```
UNITED STATES DISTRICT COURT
    MIDDLE DISTRICT OF TENNESSEE
         NASHVILLE DIVISION
```

SOUTHERN ELECTRICAL HEALTH          )
FUND and CAROLINAS ELECTRICAL       )
WORKERS RETIREMENT FUND,            )
                                    )
        Plaintiffs,                 )       CONSOLIDATED
                                    )       No. 3:02-0309
v.                                  )       No. 3:03-0871
                                    )       JUDGE ECHOLS
BEDROCK SERVICES,                   )
                                    )
        Defendant.                  )

## MEMORANDUM

Pending before the Court are Plaintiffs' Motion to Reopen these consolidated cases (Docket Entry No. 85), Defendant Bedrock Services' Motion to Dissolve Prior Injunctions Entered in the Case (Docket Entry No. 68), Plaintiffs' Motion to Strike or Disregard Declarations (Docket Entry No. 77), and Plaintiffs' request in its Complaint in Civil Action No. 3:03-0871 that Defendant Bedrock Services be held in civil contempt for failure to comply with the Court's permanent injunction entered by Order dated July 24, 2003 (Docket Entry No. 10), in Civil Action No. 3:02-0309. The parties have responded in opposition to these Motions.

Further, Plaintiffs made an oral Motion at the December 6, 2004 Show Cause Hearing asking the Court to hold the attorney for Defendant Bedrock Services, Glen C. Shults, in civil contempt. (Docket Entry No. 71, Hr'g Tr. at 10.) Defendant and Mr. Shults responded in opposition to that Motion in Defendant Bedrock Services' Post-Hearing Brief filed on December 16, 2004. (Docket Entry No. 74.) Plaintiff's oral Motion will be denied because Mr.

1

Shults was given no prior notice of any attempt to hold him in civil contempt of court.

## I.   FACTS AND PROCEDURAL HISTORY

The matters presently before the Court concern Defendant's failure to abide by the permanent injunction entered in <u>Southern Elec. Health Fund v. Bedrock Services</u>, Civil Action No. 3:02-0309. In that case, Plaintiffs Southern Electrical Health Fund and Carolinas Electrical Workers Retirement Fund brought suit against Defendant Bedrock Services pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., as amended by 29 U.S.C. § 1145, to recover delinquent health and retirement benefits for Bedrock Services' electrical employees who were covered by a pre-hire collective bargaining agreement. Plaintiffs also sought to require Defendant to make regular monthly reports and pay benefits due to the funds as required by federal law.

Defendant did not appear to answer the Complaint. Plaintiffs moved for entry of default, and on May 30, 2002, the Clerk entered default against Defendant.  The Court then granted Plaintiffs' motion for a temporary injunction, requiring Defendant to make all employer contributions then due and owing to the funds and to submit in a timely manner all payroll reports and future payments as required by § 1145.  These Orders were served on Defendant in North Carolina, but Defendant did not make an appearance in this Court or comply with the Court's temporary injunction.  On November

21, 2002, the Court entered an Order directing Defendant to show cause why it should not be held in contempt.

On December 16, 2002, Defendant made its first appearance in the case. It moved to set aside the entry of default, and moved to transfer venue of the case to the Western District of North Carolina. After extensive briefing on the issues, this Court entered a Memorandum and Order on July 24, 2003, which denied Defendant's motion to set aside the entry of default, denied the motion to transfer venue, and granted Plaintiffs' motion to convert the temporary restraining order to a permanent injunction. The Court granted Plaintiffs' motion for an award of attorney's fees.

Defendant Bedrock Services pursued an interlocutory appeal challenging the Court's entry of the permanent injunction, as well as a related appeal challenging the Court's award of attorney's fees to Plaintiffs. The United States Court of Appeals for the Sixth Circuit consolidated the appeals and recently affirmed the Court's entry of the permanent injunction.[1] Southern Elec. Health Fund v. Bedrock Serv., Nos. 03-6150, 04-5147, 2005 WL 1993296 (6th Cir. Aug. 16, 2005).

---

[1]On September 28, 2004, the Court entered an Order asking the Sixth Circuit to remand the attorney's fee issue because final default judgment had not been entered in the case when the attorney's fee motion was granted in part. (No. 3:02-0309, Docket Entry No. 62, Order). The Sixth Circuit acceded to the Court's request and remanded the attorney's fee issue. Southern Elec. Health Fund, 2005 WL 1993296 at * 5-6.

The Court cannot at present vacate its Memorandum and Order of December 23, 2003, which awarded attorney's fees to Plaintiffs, (No. 3:02-0309, Docket Entry Nos. 57 & 58), because a bankruptcy automatic stay prevents such action, as will be explained later in this opinion.

3

While the interlocutory appeal of the permanent injunction was pending, Plaintiffs filed a Complaint in Civil Action No. 3:03-0871, which is now consolidated with Civil Action No. 3:02-0309, seeking enforcement of the permanent injunction and a determination that Bedrock Services, by and through its sole proprietor, Steven J. Wood, is in contempt of the Court for failure to comply with the permanent injunction. Plaintiffs contend Defendant failed to submit reports and make payments to the funds as the Court directed even though Defendant has the financial resources to pay the amounts owed. Plaintiffs claim they will be substantially injured without Defendant's payment of contributions if they must continue their obligation to provide health and/or retirement benefits to Defendant's employees.

Defendant Bedrock Services moved to dismiss the Complaint for lack of subject matter jurisdiction, improper venue, failure to state a claim, and failure to join necessary and indispensable parties. Alternatively, Defendant sought, for the second time, transfer of this matter to the Western District of North Carolina. Plaintiffs moved for an Order requiring Defendant to show cause why it should not be held in civil contempt. On September 28, 2004, the Court denied Defendant's motion to dismiss on all grounds, refused again to transfer the case to the Western District of North Carolina, and ordered Defendant to appear at a hearing set for December 6, 2004, to show cause why it should not be held in civil contempt for failing to abide by the Court's permanent injunction. (No. 3:03-0871, Docket Entry Nos. 14 & 15.)

At the show cause hearing, Defendant conceded that Steven J. Wood, as sole proprietor of Bedrock Services, was liable for the debts of the business. (December 6, 2004 Show Cause Hr'g Tr. at 13.) Through the testimony of Angie Rye, Plaintiffs admitted into evidence copies of the monthly reports Bedrock Services submitted to the Plaintiffs for the months of May 2002 through October 2003. (Hr'g Tr. at 27-29, Pl. Ex. 3.) The reports showed a total amount due to the Southern Electrical Health Fund for the months of May 2002 to October 2003 of $33,089.78, and to the Carolinas Electrical Workers Retirement Fund for the same months in the amount of $10,328.67. Defendant Bedrock Services did not pay the amounts owed to the Plaintiffs. (Id. at 16-27, Pl. Exs. 1 & 2.)

Although Plaintiffs' summary Exhibits 1 and 2 also showed additional amounts Defendant owed for penalties and interest, Plaintiffs withdrew their "request for a compensatory compliance fine as it relates to anything except the base amount of the contributions[.]" (Id. at 21.) Plaintiffs reserved the right to seek penalties and interest in connection with any final default judgment for damages entered in the case. Plaintiffs asserted that Defendant Bedrock Services also owed contributions for November and December 2003, because the company did not cease doing business until December. The Court specifically explained that the sole purpose of the hearing was to determine whether Defendant should be held in contempt for not complying with the permanent injunction "requiring them to report and pay these amounts. That's not a

5

final judgment of any delinquency that may be owed." (Id. at 22-24, 90-91.)

Called as a witness for Plaintiff, Steven Wood testified he engaged in the electrical contracting business as the sole proprietor of Bedrock Services through 2003 until his electric supply creditors refused to extend his lines of credit, his trucks were repossessed, and he was forced out of business. (Id. at 34, 41, 65-66, 70, 77.) He admitted that Bedrock Services received income in 2002 and 2003 and that he took draws to pay living expenses for himself, his wife and two minor children. When the Plaintiffs filed suit against Bedrock Services in March 2002, Wood borrowed $11,000 from his wife to pay the Plaintiffs the employee health and retirement benefits due for the months of February, March and April 2002. After that, he stopped making payments to the Plaintiffs. When he closed Bedrock Services in December 2003, he sold his client list for $500 to an employee, Matthew Jarvis, and the bookkeeper, Cynthia (Fisher) Gaddy. (Id. at 35-40, 51-52, 75.)

On January 2, 2004, Wood's wife, Jennifer, along with Jarvis and Gaddy, formed a new corporation, Integrated Wiring Concepts, Inc., to continue the electric contracting work Bedrock Services had been doing. Wood agreed to a payment plan to settle his debts with the electric supply houses, and in turn they agreed to extend credit to the new corporation. The corporation's office is located in the Wood home. Jennifer Wood is the president and registered agent of the corporation and receives $800 in salary each week.

Steven Wood could not explain her duties, but he knew that she conferred with Jarvis and Gaddy and directed the payment of bills. Steven Wood's electrical license supports the business and he acts as an employee installer and project manager for the corporation. He does not own any stock in the corporation and he is not a director or officer. Wood is paid $200 in salary each week for holding his electrician's license. He then receives a fee of $200 for every installation he completes. During some weeks he completes two or three jobs; during other weeks he completes as many as five or six jobs. On a "good week" he earns $1,200 to $1,400 and on a "bad week" he is guaranteed $200. Wood uses a vehicle purchased by the corporation. He did not personally contribute money to purchase the vehicle, nor did he help pay for the corporation's liability insurance and worker's compensation insurance premiums. Up to three employees assist Wood in completing his jobs. Jarvis serves as superintendent and tells Wood which jobs to complete. Gaddy continues to work as the bookkeeper two days per week. (Id. at 41-48, 50, 72, 77-79.)

Wood testified that, during 2002 and 2003 when he was doing business as Bedrock Services, he did not have the money to pay the amounts due to Plaintiffs for employee health and retirement benefits. He has had a negative net worth since May 2002, and he does not currently have the ability to pay the amounts due. Wood and his wife built a house to sell in Mars Hill, North Carolina, but they were unable to find a buyer, went into default on the mortgage, and eventually turned the property over to the mortgagee

7

for the amount outstanding on the mortgage and realized no capital gain. Jennifer Wood inherited from her father a home located in Fletcher, North Carolina, where the Wood family lives. Steven Wood does not have a monetary interest in that home, but the Woods obtained a home equity line of credit against the residence in the amount of $8,000 to $10,000, which remains outstanding. The Woods jointly own a house in Candler, North Carolina, that is appraised at $125,000, and on which a mortgage of approximately $70,000 to $75,000 is owed. Wood testified he owes a number of other debts, but he does not have any substantial assets. He owns a home theater system, a set of golf clubs, a term life insurance policy without any cash value, and a 1997 Toyota Camry on which $4,000 is owed. (Id. at 58-59, 61-74.) He has a retirement account worth $35,000 to $40,000 in the Carolinas Electrical Workers Retirement Fund generated as a result of his previous work as a union electrician, but he claims he was told by a local union official that he could not withdraw that money. (Id. at 75-76, 81-82.)

Although Defendant moved to admit as Defendant's Exhibit 1 a number of documents and pleadings to support Woods' testimony, the Court expressed evidentiary concerns and Defendant withdrew the exhibit. The Court marked Defendant's Exhibit 1 for identification only. (Id. at 52-57.)

At the conclusion of the hearing, the Court permitted Defendant to file the briefs and appendix submitted to the Sixth Circuit on appeal for the limited purpose of showing that Defendant believed it had a good-faith basis to assert the entire case should

8

be heard in North Carolina under Fourth Circuit law, where Wood would not be responsible for employee health and retirement benefit contributions after repudiating the union contract in May 2002, and not in Tennessee under Sixth Circuit law, where Wood can be held liable for such contributions. (Id. at 89-90.) The Court also stated: "If the parties want to file anything further with regard to the show cause hearing we've had today *and what you believe the evidence has shown*, I'll allow you to do that within ten days." (Id. (emphasis added).)

In addition to a post-hearing brief, Defendant filed the Declarations of Jennifer Wood and Cynthia Gaddy, which purport to authenticate and lay foundation for the admission into evidence of Bedrock Services' profit and loss statements for 2002 and 2003, which are attached to the Declarations. The Wood Declaration also purports to authenticate the business checking account ledger for Bedrock Services from May 2002 to December 2003 and the Articles of Incorporation of Innovative Wiring Concepts, which are attached as exhibits.

Plaintiffs filed a motion to strike or disregard the Declarations on the grounds they were filed in violation of Federal Rule of Civil Procedure 43(a) and they are deficient under Federal Rules of Evidence 803(6) and 902(11). Relying on Federal Rule of Evidence 106, Defendant contends the Court should admit the Declarations and exhibits attached to them because Plaintiffs examined Steven Wood at the show-cause hearing using the 2002 and 2003 profit and loss statements in a limited manner and thereby

9

"left a completely misleading impression about the firm's financial circumstances and Wood's ability to pay any delinquent trust fund contributions during that period." (Docket Entry No. 79, Defendant's Response at 1.)

On January 24, 2005, Steven Wood filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of North Carolina. Upon receiving notice of the bankruptcy filing, on February 4, 2005, the Court ordered that these consolidated cases be closed administratively. (Docket Entry No. 82, Order.)

On June 20, 2005, the Bankruptcy Court granted Plaintiffs' motion for relief from the automatic stay to permit the interlocutory appeal in the Sixth Circuit to proceed to conclusion. In the same Order, the Bankruptcy Court lifted the automatic stay so that "the actions pending in the United States District Court for the Middle District of Tennessee (consolidated Nos. 3:02-0309 and 3:03-0871) may proceed to conclusion as to any issues pertaining to any violation of the injunction and any further matters resulting therefrom, including, but not limited to, a subsequent penalty." (Docket Entry No. 85, Motion to Reopen, Attachment.)

Plaintiffs' Motion to Reopen these consolidated cases then followed. The Court will consider each of the pending motions.

10

## II. ANALYSIS

**A. Motion to Reopen**

The Court will grant Plaintiffs' Motion to Reopen these consolidated cases. The Bankruptcy Court's Order is very specific, however, and lifts the bankruptcy automatic stay for the limited purpose of allowing this Court to consider "any violation of the injunction and any further matters resulting therefrom, including, but not limited to, a subsequent penalty." The Bankruptcy Court further provided that, "[s]hould there be a determination the subject injunction was properly issued and should the District Court determine to impose a penalty for violation of the injunction, **IT IS FURTHER ORDERED** the Movants are allowed an extension of time through December 21, 2005 to object to discharge of any such penalty." ((Docket Entry No. 85, Motion to Reopen, Attachment.)

The Bankruptcy Court's Order does not lift the automatic stay to allow this Court to determine the total amount of damages, including penalties and interest, demanded by Plaintiffs from Defendant; to enter final judgment; or to vacate its prior attorney's fee award and determine the amount of any attorney's fees due at the entry of final judgment. The Court is limited to deciding whether Defendant violated the permanent injunction and whether a contempt penalty should be imposed.

As previously stated, the Sixth Circuit upheld the permanent injunction after the bankruptcy automatic stay was lifted. <u>Southern Elec. Health Fund v. Bedrock Serv.</u>, Nos. 03-6150, 04-5147,

11

2005 WL 1993296 (6th Cir. Aug. 16, 2005). The Sixth Circuit's mandate issued on September 7, 2005. (No. 3:02-0309, Docket Entry No. 95.) Therefore, jurisdiction is now vested in this Court to resolve the outstanding issues relating to Defendant's failure to comply with the permanent injunction.

**B. Defendant's Motion to Dissolve Prior Injunctions**

Defendant's Motion to Dissolve Prior Injunctions Entered in the Case (Docket Entry No. 68), filed on November 30, 2004, in advance of the December 2004 show-cause hearing, has become moot in light of the Sixth Circuit's recent opinion affirming the permanent injunction. <u>Southern Elec. Health Fund</u>, 2005 WL 1993296 at * 5. Therefore, the Court will deny Defendant's motion as moot.

The Court notes that Defendant contends in its post-hearing brief submitted after the show-cause hearing that, in May 2002, Steven Wood effectuated a repudiation of the collective bargaining agreement under which the duty to pay the health and retirement contributions arose, that he was not liable for payment of benefits after that date and that, in any event, he was not liable for payment of benefits after November 2002 when the collective bargaining agreement terminated. The merits of such defenses are not before the Court because default was entered against Bedrock Services for failing to appear and defend. Any such defenses should have been raised by filing an Answer or appropriate motions to dismiss in response to the initial Complaint at the outset of this litigation. It is too late to raise such claims at this juncture.

12

**C. Motion to Strike**

Plaintiffs' Motion to Strike the Cynthia Gaddy and Jennifer Wood Declarations filed by Defendant after the show-cause hearing will be granted. Plaintiffs' filing and service of a Motion for Order To Show Cause on November 4, 2003, placed Defendant on notice that it should prepare to defend its decision not to pay the health and retirement contributions owed to the Plaintiff funds. In response, Defendant moved for the second time to dismiss or to transfer venue to North Carolina. In the Court's Order denying the Motion to Dismiss filed September 28, 2004, the Court granted Plaintiffs' Motion for an Order to Show Cause and ordered Steven Wood to appear at the show cause hearing set for December 6, 2004. Thus, Defendant knew about the show-cause motion for thirteen months, and had two months' notice to prepare for the show-cause hearing where Defendant had the opportunity to persuade the Court of Defendant's alleged inability to pay the amounts owed.

Instead, Steven Wood and his counsel attended the show-cause hearing unprepared to present admissible evidence establishing the defense of inability to pay. When the Court refused Defendant's attempt to admit a compilation of documents without proper foundation, Defendant withdrew the exhibit. At the end of the hearing, the Court did not authorize the filing of declarations and exhibits after the hearing to be considered as evidence in the case. Rather, the Court permitted the parties to file briefs to argue "*what you believe the evidence has shown*[.]" Without seeking

13

leave of Court, Defendant filed the Gaddy and Wood Declarations and the attached exhibits.

At the civil contempt show-cause hearing, Defendant carried a burden of production to show his present inability to comply with the permanent injunction. See United States v. Rylander, 460 U.S. 752, 757 (1983); Rogers v. Webster, 776 F.2d 607, 612 (6th Cir. 1985). While the Sixth Circuit generally has agreed with the proposition that a contempt adjudication may rest on uncontested affidavits and accusations, Rogers, 776 F.2d at 612; Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716, 721 (6th Cir. 1996), the Court in this case granted a show-cause hearing for the purpose of taking evidence and testimony and giving both parties the opportunity for cross-examination of witnesses. Other than the testimony of Steven Wood offered during his cross-examination, Defendant did not produce at the show-cause hearing any other testimonial or documentary evidence tending to establish Defendant's inability to pay.

As the Supreme Court noted in Rylander, the show-cause hearing "was a time for testimony, and Rylander's *ex parte* affidavit and uncross-examined testimony were properly disregarded by the District Court." Rylander, 460 U.S. at 758. Defendant's unilateral attempt to expand the evidentiary record after the show-cause hearing by submitting declarations and exhibits that Plaintiffs have had no opportunity to cross-examine likewise will be disregarded. If the Defendant believed it possessed evidence important for the Court to consider, Defendant had at least two,

14

and at most thirteen, months to prepare to present such evidence at the show-cause hearing.

Defendant suggests that the declarations and exhibits are admissible under Rule 106 to rectify false impressions left by Plaintiffs' examination of Steven Wood. Rule 106 provides, however, that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Thus, if Defendant wanted to counteract any examination and testimony it considered misleading, under Rule 106 Defendant was required to do so "at that time" during the hearing. Accordingly, for these reasons, the Court will grant Plaintiffs' Motion to Strike the Gaddy and Jennifer Wood Declarations and the attached exhibits.

**D. Civil contempt finding and penalty**

A decision on a motion for contempt lies within the sound discretion of the Court. See Electrical Workers Pension Trust Fund of Local Union #58 v. Gary's Elec. Serv., 340 F.3d 373, 378 (6th Cir. 2003). While the contempt power should not be used lightly, the power "'is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed'" by law. Id. (quoting Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450 (1911)). Contempt proceedings are used to "enforce the message that court orders and judgments are to be complied with in a prompt manner." Id. In civil contempt

15

proceedings, judicial sanctions may be imposed for either or both of two purposes: to coerce the defendant into compliance with the Court's order and to compensate the movant for the losses sustained. Id. at 379 (citing United States v. United Mine Workers of Am., 330 U.S. 258, 303-04 (1947)).

To hold a litigant in contempt, the movant must produce clear and convincing evidence to show a violation of a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order. Id. (citing NLRB v. Cincinnati Bronze, Inc., 829 F.2d 585, 588 (6th Cir. 1987)). "Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order." Id. (emphasis in original). To meet the burden of production in this Circuit, Defendant Bedrock Services, through Steven Wood, must show "'categorically and in detail'" why it is unable to comply with the Court's order. Id. (quoting Rolex Watch U.S.A., Inc., 74 F.3d at 720)). The Court must consider whether Wood took all reasonable steps within his power to comply with the Court's Order. Id. Additionally, Wood must show that he is not responsible for his present inability to pay. Id. at 383.

The permanent injunction issued by the Court on July 24, 2003, provided as follows: "Defendant is hereby DIRECTED to pay the contributions owed to the Plaintiff Funds after April 2002 as well as submit monthly payroll reports and corresponding contributions,

16

and make payments to Plaintiffs as required by the pre-hire collective bargaining agreement." (No. 3:02-0309, Docket Entry No. 47, Order at 1-2.) At the show-cause hearing, Plaintiffs met their burden to show by clear and convincing evidence that Defendant violated the explicit provisions of the permanent injunction.

It is undisputed that Defendant Bedrock Services did not submit monthly reports to Plaintiffs for November and December 2003 as ordered, even though Defendant operated in that time period. It is also undisputed that Defendant did not pay to Plaintiffs the funds it owed for employee health and retirement benefits for the period May 2002 through December 2003 as ordered. Plaintiffs proved, however, only the principal amount of contributions due for the period May 2002 through October 2003 to Southern Electrical Health Fund in the amount of $33,089.78 and to Carolinas Electrical Workers Retirement Fund in the amount of $10,328.67.

Defendant Bedrock Services did not carry its burden of production to show a present inability to comply with the Court's Order. Defendant presented absolutely no reason why it did not submit monthly reports to Plaintiffs for November and December 2003 during a time Bedrock Services was operating. While there is no question Steven Wood faced financial pressure in 2002 and 2003 leading to the failure of his sole proprietorship, he has not produced evidence "categorically and in detail" from which the Court can determine that he is presently unable to pay the amounts he owes on behalf of Bedrock Services to the Plaintiffs. Moreover, Wood has not produced any evidence to explain the demise of Bedrock

Services and to show that he is not responsible for the present inability to pay the amounts due.

To the contrary, the evidence shows Wood works for a new company incorporated by his wife and former employees. He earns as much as $1,400 in salary each week installing electric projects and he is guaranteed $200 each week for allowing the corporation to rely on his electrician's license. While Wood was the sole owner of Bedrock Services and "ran the show," he does the same work now, but allows others to direct his actions. The Court finds that the new corporation was structured to circumvent the Court's permanent injunction, and thus, Wood lacks the clean hands essential to the Rylander defense. See Gary's Elec. Serv., 340 F.3d at 384.

The evidence further shows that Steven Wood is joint owner with his wife of a house in Candler, North Carolina, and that they have approximately $50,000 in equity in the house. In addition to his weekly stream of income, Wood has a retirement account at Carolinas Electrical Workers Retirement Fund valued at between $35,000 and $40,000. While an early withdrawal from that retirement fund may trigger penalty and tax consequences, Defendant did not produce any compelling evidence that Wood is barred from withdrawing any portion of that retirement fund to pay the debts at issue here, other than a hearsay statement of a local union official that the money cannot be withdrawn.

Wood also did not produce evidence, other than a reference to his wife's unwillingness to incur more debt, to show that he cannot borrow money, pledging as collateral his retirement fund or the equity in the house. Thus, the Court is not convinced that Wood

took all reasonable steps to comply with the Court's permanent injunction. Rather, the entire record in this case shows that Wood intended from the outset that he would not be bound by the Court's permanent injunction and other Orders. Accordingly, the Court finds Defendant Bedrock Services, through its sole proprietor, Steven J. Wood, in civil contempt of Court for violating the permanent injunction by failing to submit monthly reports and failing to make required payments when due.

The Court may impose as a sanction for civil contempt a compensatory compliance fine in an amount equivalent to the underlying delinquent payments payable to the Plaintiffs. United Mine Workers v. Bagwell, 512 U.S. 821, 828 (1994) (holding contempt sanction is considered civil and remedial if it compensates the complainant for losses); United Mine Workers of Am., 330 U.S. at 303-304 (same); Gary's Elec. Serv., 340 F.3d at 383 n.13, 385 (holding civil contempt sanction may compensate complainant for delinquent contributions as well as money squandered and diverted by corporate president). Consequently, the Court imposes on Defendant Bedrock Services compensatory compliance fines for civil contempt, payable to the complainants, Southern Electrical Health Fund in the amount of $33,089.78 and Carolinas Electrical Workers Retirement Fund in the amount of $10,328.67.

### III. CONCLUSION

For the reasons explained above, Plaintiffs' Motion to Reopen these consolidated cases (Docket Entry No. 85), will be GRANTED for the limited purpose of ruling on the issue of civil contempt for violation of the permanent injunction. Defendant Bedrock Services'

19
Case 3:02-cv-00309   Document 96   Filed 11/18/05   Page 19 of 20 PageID #: 90

Motion to Dissolve Prior Injunctions Entered in the Case (Docket Entry No. 68), will be DENIED AS MOOT. Plaintiffs' Motion to Strike or Disregard Declarations (Docket Entry No. 77), will be GRANTED. Plaintiffs' oral Motion, made at the December 6, 2004 Show Cause Hearing, to hold the attorney for Defendant Bedrock Services, Glen C. Shults, in civil contempt will be DENIED.

Defendant Bedrock Services, by and through its sole proprietor, Steven J. Wood, will be held in civil contempt of the Court for failure to comply with the Court's permanent injunction entered by Order of July 24, 2003 (Docket Entry No. 10), in Civil Action No. 3:02-0309.

As a consequence of Defendant Bedrock Services' civil contempt, the Court will impose compensatory compliance fines, payable by Steven J. Wood on behalf of his sole proprietorship, Bedrock Services, to Plaintiff Southern Electrical Health Fund in the amount of $33,089.78 and to the Plaintiff Carolinas Electrical Workers Retirement Fund in the amount of $10,328.67, which compensatory compliance fines shall be paid in full no later than December 31, 2005.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE